CHARLES A. POPE AND JULIUS S. WALSH, TRUSTEES OF OCTA-
VIA BOYCE, Plaintiffs in Error, *v.* JOHN MOONEY AND LOUIS
G. PICOT, Defendants in Error.

1. *Conveyances—Evidence—Certified Copies.*—Certified copies of conveyances
may be read in evidence under the statute, R. C. 1855, p. 365, § 46, when
the original is not in the control or possession of the party, his agents or
bailees—Barton v. Murrain, 27 Mo. 235. A deed in trust will be presumed
to be in the possession of the trustees or their beneficiaries.
2. *Practice—New Trials—Setting aside Non-suit—Mistake of Counsel.* — Non-
suit set aside upon payment of costs, under the circumstances, it appearing
that the counsel had given a mistaken construction to the statute and the
decisions of the court thereupon.

*Error to St. Louis Land Court.*

*R. M. Field,* for plaintiffs in error.

*L. G. Picot,* for defendants in error.

HOLMES, Judge, delivered the opinion of the court.

It is assigned for error that the court below erred in over-
ruling the plaintiffs' motion to set aside the non-suit and
grant a new trial. The reasons for the motion were that the
court erred in refusing to admit in evidence for the plaintiffs
a copy of a marriage contract, duly certified from the office
of the Recorder of deeds for the county of St. Louis; and that
the exclusion of the paper, upon objection made, *operated a
surprise* upon the plaintiffs' counsel.

The suit was commenced in 1856, in the names of the
trustees to whom the land sued for was conveyed by the mar-
riage contract, and the trial was had in 1864. The benefi-
ciaries resided in Louisiana; their agent and the trustees in
St. Louis. Suit was instituted, and counsel employed, through
the agent who had charge of the business. It appears that
the counsel went to trial, relying upon an opinion he had
formed, from the previous ruling of this court upon the stat-
ute on this subject (R. C. 1855, p. 365, § 46), in the case of
Barton v. Murrain, 27 Mo. 238, that the original would be
presumed to be in the possession of the husband in Louisia-

na, and that the trustees, as the parties plaintiff, would be entitled to read an office copy in evidence; and his affidavit states that he was taken by surprise by the objection of the defendants' counsel, and was unable to produce witnesses to show where the original was; that he believed the same was in the hands of the husband in Louisiana, but that the grounds of his belief were only the nature and contents of the instrument and the usual course in such transactions; and that, if a new trial were granted, the original paper could be produced, or its absence accounted for.

By this instrument the property of the wife was settled upon the trustees to her separate use, but the husband was entitled to one third of the annual income. The trustees held the bare legal title for the purposes of the trust, and both husband and wife were beneficiaries. The trustees were the only necessary parties to this action in ejectment, as representing the beneficiaries, but the suit was really for the benefit of the husband and wife only. Now, whether the original were in the actual possession of the trustees, or of either of the beneficiaries, or of their agent, it must be considered to have been *within the power* of the parties plaintiff, within the meaning of the statute; though it might be presumed from the nature of the paper, as well as other circumstances indicative of its place of custody, that the person to whom the possession rightfully belonged had the actual custody. In this case, we think the presumption would be rather in favor of the wife than the husband; but whether in favor of one or the other, it must have have been equally within the power of the plaintiffs, so far as it would appear by the face of the paper—R. C. 1855, p. 365, § 46; Walker v. Newhouse, 14 Mo. 273.

In Barton v. Murrain, 27 Mo. 235, it was said that "the words of the statute *'not within the power'* should be construed as not within the control or possession of the party wishing to use a copy; that is, not in the possession of the party, his agent, servant or bailee, or other person under his control"; and that "if the original is presumed to be in the

hands of a third person, a copy may generally be read, without the preliminary oath or affidavit of the party wishing to use it." The counsel appears to have construed the instrument in such manner that it might be presumed to be in the possession of the husband as a third person and an inhabitant of an enemy's country during a time of civil war, with whom communication might be difficult, if not unlawful, and so not within the power or control of the parties plaintiff. There is much force in this view; but the suit was pending some years before the civil disturbances began, no efforts had been made to obtain the paper, and the counsel had relied upon the admissibility of the copy. We must hold that the non-production of the original was not sufficiently accounted for, and that there was no error in excluding the copy.

In the matter of surprise, we are referred to the peculiar provisions of the practice act of 1849—Laws of 1849, p. 87, § 3. We find nothing here that can justify any other than the ordinary and well settled meaning of a *surprise* in law, beyond the more liberal spirit which that act undoubtedly intended to inculcate in respect of the mere technicalities of pleading and practice.

It may be considered the established rule, that surprise may be, not must be, a ground for a new trial; as where it is occasioned by an act of the adverse party, or by circumstances out of the knowledge and beyond the control of the party injured by it; but it will not be allowed "when he might have been fully informed by the exercise of ordinary diligence, or when the surprise was induced by his own oversight, forgetfulness, or neglect.." — Matthews v. Allaire; 6 Halst. 243; 3 Grah. on New Tr., by Waterman, 876; Peers v. Davis, 29 Mo. 184.

We are inclined to think that the situation of the counsel in this case arose rather from a mistaken construction of the statute, and the decision in Barton v. Murrain, than from any want of diligence or skill. In the case of the People v. Barnes, 12 Wend. 492, where the plaintiff had failed to make sufficient proof, for want of a decree of the surrogate's court

ordering the bond to be prosecuted, as required by the statute, supposing that he would be entitled to recover without that evidence, and was non-suited; though he was properly non-suited, the court granted a new trial on payment of costs, for the reason that the plaintiff had "fallen into an error in his construction of the statute, and might have a good cause of action in point of fact within the decision." As in this case, it seems to have been a surprise resulting from an error of opinion rather than from anything which could justly be called ignorance, remissness, or neglect. The disturbed condition of the country, and the difficulty of communicating with parties resident in Louisiana, may reasonably be allowed to afford some excuse for an apparent want of that diligence which would ordinarily be required.

The cases relied upon in support of the action of the court below are distinguishable from a case of this kind. In Cockrill v. Calhoun, 1 Nott. & McC. 285, the error consisted in overlooking a part of the will on which the plaintiff's right to recover depended; and it was said, that a surprise can never be admitted "when it arises out of the *face* of the paper on which *alone* the right of the party to recover depends." Here, the want of diligence and skill was manifest, and scarcely admitted of excuse. In Murray v. Murray, 2 Hayw. 290, it was merely held, that if a plaintiff presses for a trial, "and it is found on the trial that the testimony he relied on cannot be given in evidence as he expected, and he be non-suited," the allegation of surprise shall not prevail. It does not appear by the report what that testimony was, but it may be supposed that a want of diligence, or mere ignorance of the law, was apparent. So, also, where the papers had been shown to counsel the day before the trial, and it had not occurred to them that the original would be required, and they did not remember that it would be wanted on the trial, it was held that "this was no surprise, but *sua negligentia*," and the court refused to set aside the non-suit. —Thompson v. Thompson, 2 Hayw. 405. It was plainly a case of mere inattention and neglect. In the case of Jackson

v. Horton, 9 J. R. 77, the plaintiff had not come prepared with sufficient proof of any kind to make out his case on the trial, and it was decided only that a new trial would not be granted merely "because the party came to trial unprepared." We see nothing to object to, in any of these decisions ; but we do not find that they exactly cover this case.

Of like character was the case of Hite v. Lenhart, 7 Mo. 24, where the copy of a deed was certified from a clerk's office in the State of Kentucky, and the plaintiff claimed a surprise on the ground that, having lately come to the State, he was unacquainted with the statute law, and thought such copy would be evidence under the statutes. The court said: "Surprise in matter of fact, when due diligence has been used, may be good cause for a new trial, but not in matter of law ; because, if due diligence be used, counsel cannot be surprised in matter of law." We do not doubt that this is a correct statement of the rule. Mere ignorance of the law, when by due diligence it might be known to any competent attorney, would clearly not excuse him. But there may be questions of the proper construction of a statute, or of a judicial decision, upon which very learned counsel might reasonably differ in opinion without much fault on their part, as the case was in the People v. Barnes, and as we think may have been the case here. The rights and interests of the parties are not wholly to be overlooked, and it would require a more rigid application than the whole circumstances would appear to justify, to bring the case within the strictness of the rule.

For all that appears, the plaintiffs may have a good cause of action ; but little would probably be gained by the defendants by a refusal of the motion ; and we think the ends of justice will be the better subserved by granting a new trial, on the condition of paying costs.

Judgment reversed and the cause remanded. The other judges concur.